## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRITNEY R. THOMAS, AIS # 237646,** | : | |
| **Plaintiff,** | : | |
| **vs.** | : | **CIVIL ACTION 15-00291-CB-C** |
| **LIEUTENANT DEMINGS, et al.,** | : | |
| **Defendant.** | : | |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. §§ 636(b)(1)(A & B) and Local Rule 72(a)(2)(R), and is now before the undersigned on Plaintiff's motion to amend complaint (Doc. 11), Plaintiff's Motion to Subpoena Surveillance Video[1] (Doc. 27), and Defendants' Motion for Summary Judgment (Doc. 24).  After careful review of the pleadings, and for the reasons set out below, it is ordered that the motion to subpoena surveillance video is denied as moot based on the recommendation contained in this report; and, it is recommended that Plaintiff's motion to amend the complaint be denied as it is futile,[2] that Defendants'

---

[1]     Document 27 is titled "Motion to Subpoena Surveillance footage of Docket Room on May 15, 2015 in Mobile County Jail Docket Room to Support Factual Claim."  This pleading has been interpreted by the Court as both a motion to subpoena video evidence as well as a response to the defendants' motion for summary judgment because it addresses claims asserted by the defendants in their submitted special reports and affidavits.

[2]     In his Motion to Amend, Plaintiff seeks to add two defendants, Lieutenant Love and Sergeant Henderson, to the suit for their participation in the incident at issue and use of excessive force against him.  (Doc. 11 at 1).  Specifically, Thomas alleges Sergeant Henderson grabbed him by the head or shoulders in attempt to restrain him, and Lieutenant Love grabbed him while he was restrained and failed to have the doctor examine him.  (*Id*. at 2-3).  Due to the recommendation contained in this report, the amendment of Plaintiff's complaint to include these defendants and claims would be futile, as the court finds that the evidence does not support an argument that a constitutional violation occurred in obtaining the buccal swab on

motion for summary judgment be granted, and Plaintiff's action against these moving defendants be dismissed with prejudice.

## I.      Summary of Allegations.[3]

The incident complained of in this action occurred on May 15, 2015, while Plaintiff Thomas was being held in Mobile County Metro Jail ("Mobile Metro Jail") on a charge of third-degree burglary for a residential break in that occurred on April 8, 2014 in Mobile, Alabama.  (Doc. 18 at 2; Doc. 18-4; Doc. 23 at 1).  Plaintiff was officially charged with this burglary on March 27, 2015, after DNA from a bandage found at the scene of the crime proved to be a match for Plaintiff's DNA, as listed in the Combined DNA Index System (CODIS).  (Doc. 23 at 1).  At the time Plaintiff received this charge, he was incarcerated at Easterling Correctional Facility where he was serving a sentence for a previous burglary conviction.  (Doc. 18 at 2; Doc. 18-4).  Plaintiff was thereby transferred by writ from Easterling Correctional Facility to Mobile Metro Jail on May 12, 2015 to await trial on the third-degree burglary charge.  (*Id.*).

In connection with the pending third-degree burglary charge, on May 14, 2015, Mobile County District Judge George N. Hardesty, Jr. ordered Britney Thomas to submit to the collection of a buccal swab in order to certify the DNA evidence recovered from the crime scene was that of Thomas.  (Doc. 20 at 3 -4).

On May 15, 2015, Detective Courtney Golston and two other Mobile Police Department Officers (not a party to this suit) arrived at Mobile Metro Jail to obtain the court ordered DNA swab.  (Doc. 23-1).  Plaintiff Thomas was called to the docket room, shown the court order, and informed by Sergeant Hayes that he was to submit to the

---

May 15, 2015.

[3]      The undersigned has made his "determination of facts" by "review[ing] the record, and all its inferences, in the light most favorable to [Plaintiff Thomas,] the nonmoving party." *E.g.*, *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997).

ordered buccal swab. (Doc. 18 at 1). However, Plaintiff verbally refused to give the sample.[4] (Doc. 1 at 4). Following Plaintiff's noncompliance, Sergeant Hayes contacted Lieutenant Love for assistance; Love arrived in the docket room, along with Lieutenant Demings and Correctional Officer Clark. (Doc. 20-1 at 1). In an attempt to physically obtain the DNA sample, the officers grabbed Thomas by the shoulders, head, and jaw, and Plaintiff asserts he "repeatedly told officers to let him go." (Doc. 27 at 1). Due to Plaintiff Thomas's continued refusal to comply, Lieutenant Love ordered Officer Clark to drive-stun Plaintiff. (Doc. 20 at 1; Doc. 23 at 2; Doc. 18-3 at 1; Doc. 20-1 at 1). The prongs were removed from the Taser gun, and Officer Clark administered a single drive-stun to Plaintiff's chest. (Doc. 20 at 1; Doc. 23 at 1). Thereafter, Plaintiff was compliant, and Lieutenant Love was able to execute the court order and obtain the buccal swab sample. (Doc. 20 at 1; Doc. 23 at 1).

Immediately after the incident, a nurse examined Plaintiff and noted his blood pressure was high. (Doc. 1 at 5). The nurse also informed the doctor for Mobile Metro Jail of the situation, but no examination by the doctor was ordered and no further medical attention was needed. (*Id*.). Thereafter, Plaintiff was taken to administrative segregation for an hour or two to "calm down" and was subsequently returned to his housing area. (*Id*.; Doc. 20-1 at 1).

Plaintiff Thomas filed this suit pursuant to 42 U.S.C. § 1983 claiming Defendants Lieutenant Demings, Detective Golston, Sergeant Hayes, and Officers Clark and Hill assaulted him in violation of the Eighth Amendment and seeks damages for his pain

---

[4]     Plaintiff asserts he refused to provide the sample because Detective Golston testified before Judge Hardesty, the previous day in court, regarding the state's possession of a positive DNA sample obtained from the bandage recovered from the scene of the crime. (Doc. 1 at 4). Plaintiff, therefore, presumed, that since the state already had custody of his DNA, he need not give an additional sample. (Doc. 1 at 4).

and suffering as well as the prosecution of Defendants.  (Doc. 1 at 9).  Defendants, with

the exception of Hill, have answered the suit and submitted a special report, which the

Court has converted to a motion for summary judgment.  (*See* Docs. 18, 19, 20, 22, 23,

27).  After a thorough review of the record, the court has determined this motion is ripe

for consideration.

## II.     Summary Judgment Standard.

Summary Judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a);[5] *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.

Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165

("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the

parties remains, so long as there is 'no genuine issue of material fact.'"(emphasis in

original)).

The party asking for summary judgment "always bears the initial responsibility

of informing the district court of the basis for its motion, and identifying those portions

of the 'pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes demonstrate the absence of a

genuine issue of material fact." *Id*. at 323. The movant can meet this burden by

presenting evidence showing there is no dispute of material fact, or by showing, or

pointing out to the district court, that the nonmoving party has failed to present

---

[5]     Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts.  The standard for granting summary judgment[, however,] remains unchanged. . . . The amendments [have] not affect[ed] continuing development of the decisional law construing and applying these phrases."  Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments.  Therefore, prior case law interpreting the summary judgment standard remains relevant and unchanged.

evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 926 F. Supp. 2d 1286, 1289-90 (S.D. Ala. 2013) (citations omitted). In considering whether Defendants are entitled to summary judgment in this case, the Court views the facts in the light most favorable to Plaintiff. *Comer v. City of Palm Bay, Florida*, 265 F. 3d 1186, 1192 (11th Cir. 2001) ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." *Garczynski*, 573 F.3d at 1165 (internal citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) ("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations.") (citations omitted).

### III.    Defenses of Immunity.

**1. Sovereign Immunity**.  In their answers to this suit, Defendants have asserted the defenses of sovereign and qualified immunity.   As to the claims asserted against the defendants in their official capacities, all state defendants are entitled to sovereign immunity.  The Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," has long been held to apply "equally to suits against a state brought in federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998).  "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment." *Id*. (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)).  "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

At the time this action arose, all defendants except for Detective Golston were employed by the Sheriff of Mobile County, Alabama (docs. 18-1; 18-2; 18-3; 18-4).  The Mobile County Metro Jail officers are employed by the sheriff, and "a sheriff's 'authority and duty to administer the jail in his jurisdiction flows from the State, not the

County.'" *Purcell ex rel Estate of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1325 (11th Cir.
2005) (quoting *Manders v. Lee*, 338 F.3d 1304, 1315 (11th Cir. 2003)(en banc)).  "As
employees of the sheriff, deputies [and officers] in their official capacities, are also
entitled to Eleventh Amendment immunity."  *Scruggs v. Lee*, 256 F. App'x 229, 232 (11th
Cir. 2007); *see also Taylor v. Adams*, 221 F.3d 1254, 1256 (11th Cir. 2000) ("Alabama
sheriffs operating jails are state officers protected by Eleventh Amendment
immunity."); *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997) ("[J]ailers are
state officials for the purpose of Eleventh Amendment immunity."); *Dean v. Barber*, 951
F.2d 1210, 1215 n.5 (11th Cir.1992) ("Sheriff's departments and police departments are
not usually considered legal entities subject to suit."); *Free v. Granger*, 887 F.2d 1552,
1557 (11th Cir. 1989) ("[A] sheriff is an executive officer of the state.").  Therefore, the
Eleventh Amendment bars Plaintiff's suit for damages against Defendants Lieutenant
Demings, Sergeant Hayes, and Officers Clark and Hill in their official capacities for the
claims of excessive force used to obtain the DNA sample.

  **2.  Qualified Immunity**.  As to the claims against the defendants in their
individual capacities, "government officials performing discretionary functions
generally are shielded from liability for civil damages insofar as their conduct does not
violate clearly established statutory or constitutional rights of which a reasonable
person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.
Ed. 2d 396 (1982).  "[T]he burden is first on the defendant to establish that the allegedly
unconstitutional conduct occurred while he was acting within the scope of his
discretionary authority."  *Harbert International v. James*, 157 F.3d 1271, 1281 (11th Cir.
1998).  The burden then shifts to the plaintiff to show that the defendant's conduct
"violated a clearly established statutory or constitutional right."  *Grayden v. Rhodes*, 345
F.3d 1225, 1231 (11th Cir. 2003).

It is clear in the Eleventh Circuit, however, that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted). "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Id*. (citations omitted). As explained by the Eleventh Circuit, "[t]here is simply no room for a qualified immunity defense when the plaintiff alleges such a violation." *Id*.[6] Accordingly, in answering the questions of whether the facts alleged by Thomas make out violations of his Eighth Amendment rights, the undersigned looks at the force utilized by the defendants.

### III.    Municipal Liability

The suit against Detective Golston in her official capacity as a member of the Mobile Police Department is in actuality against the municipality she represents. *Home v. Soc. Sec. Admin*., 359 F. App'x 138, 144-45 (11th Cir. 2010) ("Where an officer is sued under § 1983 in his official capacity, the suit is actually a proceeding against the municipality the officer represents."). A municipality may only be held liable in a § 1983 action if a plaintiff can show: "(1) that his constitutional rights were violated, (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."

---

[6]      "We created this rule because, for an excessive-force violation of the Eighth . . . Amendment[], 'the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution . . . .'" *Fennell, supra*, 559 F.3d at 1217, quoting *Johnson v. Breeden*, 280 F.3d 1308, 1321-1322 (11th Cir. 2002) (other citation omitted).

*McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  In other words, a county or municipality is not generally responsible for the actions or injuries caused by its employees, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978) (Section 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor.").  "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable."  *City of Canton v. Harris*, 489 U.S. 378, 385, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989) (internal citation omitted).

In this action, Thomas fails to identify any policy or custom of the municipality responsible for causing his alleged injuries and none can be inferred from the pleadings. Additionally, as discussed below, the undersigned finds no constitutional violation has occurred.  Thus, no claim has been stated or shown against the city of Mobile, Alabama in this action.

## IV.   Discussion

As noted above, Thomas seeks redress pursuant to 42 U.S.C. § 1983 for an alleged constitutional deprivation arising out of force used on him by the defendants in their attempt to execute a court order.  Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

Plaintiff brings this action challenging that Defendants' use of force on May 15, 2015, violated his Eighth Amendment rights.  The Eighth Amendment protects a

prisoner from punishment that is cruel and unusual. *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, . . . the infliction of pain totally without penological justification. . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense." *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) (citing *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). In order to establish an Eighth Amendment excessive force claim against Defendants, Plaintiff must prove both an objective and subjective component. That is, Plaintiff must show that the alleged wrongdoing was objectively "'harmful enough'" to establish a constitutional violation and that Defendants "'act[ed] with a sufficiently culpable state of mind,'" i.e., that the defendants acted "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 & 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992) (citation omitted).

"[W]hether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley v. Albers*, 475 U.S. 312, 320-321, 106 S. Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (citation omitted). In making this determination, the Court considers the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts made to temper the severity of a forceful response, and the extent of injury suffered. *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999, citing *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085.

The courts recognize that corrections officials often must make decisions "'in haste, under pressure, and frequently without the luxury of a second chance.'" *Hudson*, 503 U.S. at 6 (citing *Whitley*, 475 U.S. at 320). Moreover, an inmate "is not at liberty to

ignore or disobey, without consequence, the lawful orders of his custodians or the rules and regulations of a jail." *West v. Sconyers*, 2010 U.S. Dist. LEXIS 123573, 2010 WL 4822084, *7 (M.D. Ala. 2010) (unpublished).  "Strict adherence to rules and orders within a penal institution's walls are necessary for discipline, and even more importantly, for the safety and security of inmates, guards, and visitors alike." *Id.*  However, "government officials may not use gratuitous force against a prisoner who has been already subdued or . . . incapacitated." *Skrtich*, 280 F.3d at 1303 (citations omitted).  "The use of force must stop when the need for it to maintain or restore discipline no longer exists." *Id.* at 1304 (citations omitted).

The Court will now turn to the facts of the case and analyze them against the *Whitley* factors: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the officers, any efforts made to temper the severity of a forceful response, and the extent of injury suffered.  *Id.* (citing *Whitley*, 475 U.S. at 321).

**1.    Excessive Force Claim.**

"[T]he core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," *Hudson*, 503 U.S. at 7, not whether the plaintiff experienced pain when drive-stunned after his failure to submit to the buccal swab.

Based on the record, the need for force was justified following Thomas's verbal refusal to give the court ordered DNA sample.  "Orders given must be obeyed.  Inmates cannot be permitted to decide which orders they will obey, and when they will obey them."  *Soto v. Dickey*, 744 F.2d 1260, (7th Cir. 1984) (upholding the use of mace in a prisoner's cell because he refused to be handcuffed), *cert. denied*, 470 U.S. 1085, 105 S. Ct. 1846, 85 L. Ed. 2d 144 (1985).  In an effort to enforce the court order and their orders to

comply, the defendants attempted to obtain the buccal swab through physical restraint - grabbing Thomas by the shoulders, head, and jaw, but causing no pain or injury, was not successful.  (Doc. 27 at 1).  It is undisputed that Thomas continued his refusal to supply the DNA sample; however, the degree to which Thomas was uncooperative at this point is disputed by the parties but is immaterial for determination of this motion.

Defendants claim Thomas was "combative" and "hostile" and that he was swinging his arms and twisting his body to prevent the officers from obtaining the swab sample.[7]  (Doc. 20 at 1; Doc. 20-1 at 1).  Defendants further assert that Thomas became "very agitated" and "started thrashing about and twisting his head, not allowing the Officers to obtain the swab.  [Thomas] was warned that if he did not comply that he would be drive stunned."  (Doc. 18 at 1).  While Thomas denies he was "combative", he admits he "repeatedly told the officers to let him go," and it is undisputed that Thomas refused to acquiesce to submitting to the mouth swab.  (Doc. 27 at 1).

Construing the facts in a light most favorable to Thomas, the undersigned finds that Thomas's persistent noncompliance through verbal refusals is sufficient to support a mounting power struggle between the plaintiff and the defendants and evidences an intensifying situation.  This escalation, or the threat of such, warrants the necessity for greater force to be used to achieve execution of the court's order, and the defendants elected to administer a drive-stun to Thomas's chest to eliminate the heightening resistance and ensure compliance.

---

[7]    The use of force report from the incident confirms that Plaintiff "was posturing up toward staff" and was instructed several times by Lieutenant Love and Lieutenant Demings to comply with the order, but Thomas refused to comply.  (Doc. 18-3 at 4).

A drive-stun consists of removing the prongs of the Taser gun and placing the weapon directly on the skin.  The weapon will cause pain in this mode, but it will not disrupt muscle control.  *Hoyt v. Cooks*, 672 F.3d 972, n.4 (11th Cir. 2012) ("In the 'drive stun' mode, the weapon is pressed against a person's body and the trigger is pulled resulting in pain (a burning sensation) but the 'drive stun' mode does not disrupt muscle control."); *see also Andrews v. Williams*, No. 2:13cv136-MHT, 2015 U.S. Dist. LEXIS 132015, *16-17  (M.D. Ala. Sept. 30, 2015) (The drive-stun mode is used "to cause a non-cooperative suspect pain, so that the suspect will be prodded into cooperating for fear of receiving additional pain.").  For this reason, the drive-stun method is considered to be a "less serious application which . . . does not override the central nervous system and does not disrupt muscle control" as does a Taser in probe mode. *Id*. at 980; *see also Andrews*, 2015 U.S. Dist. LEXIS at *16-17 ("Drive-stun mode causes pain to a subject, but it generally leaves little lasting damage beyond a burn mark.  In this way, it is a less serious use of force than the Taser use discussed in the case law . . . .").

Consequently, the use of a Taser in drive-stun mode is generally held to be a preferred and lesser use of force than the potential escalation of physical force and brutality.  *See Brooks v. City of Seattle*, 599 F.3d 1018, 1027-1028, 2010 U.S. App. LEXIS 6293, *25 (9th Cir. Wash. 2010) (Force from drive-stun is "more on par with pain compliance techniques, which this court has found involve[s] a 'less significant' intrusion upon an individual's personal security than most claims of force, even when they cause pain and injury."); *Jones v. City of Warren*, 2014 U.S. Dist. LEXIS 51550, *32, 2014 WL 1464458 (E.D. Mich. Apr. 15, 2014) (Single drive-stun found to be quick, efficient and less traumatic to plaintiff than further escalating physical efforts to overcome resistance of plaintiff to permitting his hands to be cuffed behind his back.);

13

*Law v. City of Post Falls*, 772 F. Supp. 2d 1283 (D. Id. 2011) (Court determined, even if plaintiff was entirely compliant, use of Taser in drive-stun move would not be excessive force based on rationale of *Brooks v. Cty. Of Seattle*.); *but cf. Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) (en banc) (holding that a police officer used excessive force when he used a Taser in drive-stun mode against a woman who, though still seated in her vehicle, had grown agitated and verbally combative following a traffic stop); *Brown v. City of Golden Valley*, 574 F.3d 491 (8th Cir. 2009) (holding that a police officer used excessive force when he used a Taser in drive-stun mode against a woman who refused to hang up a phone call after being pulled over for a traffic stop).

Notably, neither the Supreme Court nor the Eleventh Circuit has ruled on the use of such pain compliance techniques as the drive-stun mode, and most district court cases (as referenced above) involve the use of such force incident to an arrest.  The undersigned has found no cases within this circuit with analogous facts to this action; however, the reasoning used by the Middle District of Georgia in a case involving the use of physical force to obtain a buccal swab sample from an inmate is helpful.

In, *Skinner v. Sproul*, Case No. 1:14-CV-174-WLS-MSH, 2016 U.S. Dist. LEXIS 23459 (M.D. Ga. Feb. 26, 2016), the district court determined the force used to execute a search warrant for a buccal swab was justifiable and did not rise to the level of a constitutional violation.  The plaintiff in *Skinner*, a pretrial detainee, was presented with a search warrant for his DNA but refused to consent to the buccal mouth swab.  *Id*. at *34.  The plaintiff stood up from the restraint chair where he had been placed and jerked away when the defendant reached for his hand.  *Id*.  The defendant then hit plaintiff with his elbow, causing plaintiff to fall back into the restraint chair.  *Id*.  Other officers held plaintiff down and leaned the restraint chair back in attempt to gain access to the plaintiff's mouth.  *Id*. at *35.  The defendant shoved the plaintiff's head into the chair,

14

and due to the plaintiff's resistance, the defendant hit plaintiff again with his elbow and forced plaintiff's head back against the restraint chair.  Another officer grabbed plaintiff's neck and applied pressure in attempt to force plaintiff to open his mouth, but plaintiff continued to try and keep his mouth closed.  *Id.*  The nurse attempting to swab plaintiff's mouth made six attempts causing plaintiff's gums and lips to receive cuts and bleed.  *Id.* at 35-36.  The court determined[8] that the facts evidenced sufficient resistance by the plaintiff to the establish the need for force, and the court found the force used was not excessive because plaintiff "suffered little, if any, injury."  *Id.* at *40-41 (noting "[a]t most, Plaintiff's gums and lips were cut during [the] interaction.");  *Id.* at *41-42 (recognizing that defendant should not have struck plaintiff with his elbow but "that the strike merely caused [plaintiff] to stumble back into the restraint chair.").

In the action at hand, the undersigned is presented with facts far less brutal than those of *Skinner*.  Yet, it is clear that, like *Skinner*, Thomas consistently refused to comply with the court order and the defendants' orders.  Therefore, the use of force was necessary to achieve Thomas's compliance and restore stability and discipline to the situation.  It is also clear that the defendants tempered their response by using a weapon classified as being less forceful than physical brutality

---

[8]      The *Skinner* court analyzed the claim of excessive force pursuant to the Fourth and Fourteenth Amendments' objectively reasonableness standard set out in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473-74, 192 L. Ed. 2d 416 (2015) and *Mobley v. Palm Beach Cty. Sheriff Dep't.*, 783 F.3d 1347, 1347 (11th Cir. 2015) (explaining that the objective reasonableness standard "asks whether the force applied is objectively reasonable in light of the facts confronting the officer, a determination we make from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.").  The Supreme Court in *Kingsley*, stated in determining whether the amount of force used was reasonable courts are to consider:  "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Kingsley*, 135 S. Ct. at 2473.  Though this test is applicable to searches and seizures pursuant to the Fourth Amendment, it bears remarkable resemblance to the *Whitley* factors in determining whether or not excessive force was used under the Eighth Amendment, as discussed in this current § 1983 action.

or a Taser gun with prongs.  And, with the complaint completely lacking any allegation, evidence, or even indication that the drive-stun was used in retaliation, for the purpose of hurting plaintiff, or callously causing harm to him, the undersigned finds that all facts support the conclusion that the defendants acted with the sole intent to enforce the court order and maintain control and discipline in the jail, not to cause "unnecessary and wanton pain." *Whitley*, 475 U.S. at 320-21 (The essential question in determining if force used was constitutional or not turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.')(citation omitted)).  Defendants chose a course of action they believed to be most effective and efficient in ensuring Thomas's compliance without allowing the situation to further escalate, and they administered the force without causing lasting injuries to Thomas (evidenced by the lack of medical attention necessary).

Therefore, without determining whether or not the use of the drive-stun is an acceptable compliance technique, the undersigned finds that in this action there is no evidence the defendants acted with the malicious or sadistic intent to cause harm by administering the single drive-stun.  *See Hudson*, 503 U.S. at 7-8.  Thus, the facts of this action fall short of establishing an Eighth Amendment violation.

> **2.      Prosecution of Defendants is Not Actionable.**

Notwithstanding Plaintiff's prayer for relief that the defendants be prosecuted for assault (doc. 1 at 9), "a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another."  *Otero v. United States Attorney General*, 832 F.2d 141, 141 (11th Cir. 1987) (affirming the dismissal of an action seeking the writ of mandamus to require the defendants to investigate and prosecute a former Florida State Attorney) (citing *Linda R.S. v. Richard D.,* 410 U.S. 614, 619, 93 S. Ct. 1146, 1149, 35

L.Ed.2d 536 (1973)).  "A decision to prosecute is within the United States Attorney's substantial discretion . . . ."  *United States v. Ballard*, 779 F.2d 287, 295 (5th Cir.), *cert. denied*, 475 U.S. 1109, 106 S. Ct. 1518, 89 L.Ed.2d 916 (1986).  A court is precluded from ordering a prosecution by the United States Attorney based on the separation of powers doctrine and because the determination of whether to commence a prosecution is a process that was not contemplated for the courts to engage in and, therefore, the courts are not equipped to handle a prosecution.  *Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375, 379-82 (2d Cir. 1973) (affirming the dismissal of a complaint seeking the investigation and prosecution of persons who allegedly violated federal and state criminal statutes).  "As a general rule, the courts are not free to interfere with the prosecuting officer's discretionary decision to prosecute crime."  *United States v. Spence*, 719 F.2d 358, 361 (11th Cir. 1983).  Moreover, a federal court cannot compel state prosecutors to commence a prosecution.  *Inmates of Attica Correctional Facility*, 477 F.2d at 382-383; *accord Van Sickle v. Holloway*, 791 F.2d 1431, 1436 n.5 (10th Cir. 1986) (holding that the federal courts "have no authority to issue [a writ of mandamus] to direct state courts or their judicial officers in the performance of their duties." (internal quotation marks omitted)).

Plaintiff's requested relief is unavailable to him in this action, *Inmates of Attica Correctional Facility*, 477 F.2d at 377, 383, and is due to be denied.

## IV.     Notice of Judgment Independent of the Motion.

Rule 56 of the Federal Rules of Civil Procedure permits the court, after it has given notice and a reasonable time to respond, to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."  Fed. R. Civ. P.56(f)(3).  Thus, by filing of this Report and Recommendation, the court **notifies the Plaintiff** of its intention to consider a recommendation to the

presiding Senior District Judge that he enter summary judgment, *sua sponte*, in favor of Defendant Officer Hill on all claims raised by the plaintiff.

Plaintiff Thomas has raised an Eighth Amendment claim against Defendant Officer Hill for excessive force on May 15, 2015. This claim and all allegations made in Thomas's pleadings (*see* docs. 1, 11, 27) are identical to the claims and allegations made against Defendants Demings, Hayes, Clark and Golston. (See Doc. 1 at 5-8). For the reasons stated in this report, the court has recommended summary judgment for the defendants and dismissal of all Thomas's claims.

However, Defendant Hill has yet to be served with the complaint and is therefore not a party to this motion for summary judgment. Given that Thomas presents no additional allegations nor provides any differing facts as to his claims against Defendant Hill as those against the defendants bringing this motion for summary judgment,[9] the court maintains that its analysis of the allegations against Defendant Hill would be identical to those of the defendants in this report. Accordingly, Plaintiff Thomas is hereby put on notice by this report and the analysis of his claims of the court's intention to consider summary judgment in favor of Defendant Hill.

Accordingly, within the fourteen days provided for filing objections to this report and recommendation, Plaintiff Thomas shall show cause, in writing, why the court should not enter summary judgment pursuant to Rule 56(f)(3) of the Federal Rules of Civil Procedure in favor of Defendant Officer Hill on Plaintiff's 42 U.S.C. § 1983 claims. In responding to this notice, Plaintiff should refer to Fed. R. Civ. P. Rule 56, including

---

[9]    Thomas states "police brutality and assault" as his claim(s) against Defendant Hill and all defendants named in this action. (Doc. 1 at 8). Additionally, in Thomas's narrative and explanation of his claim, Thomas fails to make any direct allegation regarding Defendant Hill directly, and the complaint is void of any action taken by Defendant Hill except that he was present during the incident. (*Id*. at 4-5).

the following provision:

> A party asserting that a fact . . . is genuinely disputed must support the
> assertion by:
>
> (A)    citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits or
> declarations, stipulations (including those made for purposes of the
> motion only), admissions, interrogatory answers, or other materials; or
>
> (B)    showing that the materials cited do not establish the absence . . . of
> a genuine dispute, or that an adverse party cannot produce admissible
> evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Plaintiff cannot rely only on his unsworn pleadings but must

respond to this notice by filing sworn affidavits,[10] depositions, or other materials set

forth in Rule 56(c)(1)(A) – or by citing such evidence already of record in this matter –

which set forth facts presented in a form that would be admissible evidence

demonstrating that there is a genuine dispute as to a material fact for trial in this case.

If plaintiff fails to file sworn affidavits or other acceptable evidence as set forth in Rule

56 the court will accept the evidence identified above as undisputed, for purposes of

evaluating whether the court should grant summary judgment in the defendants' favor.

*See* Fed. R. Civ. P. 56(e).  Plaintiff's failure to follow the requirements of Rule 56(c)(1)(A)

in opposing the proposed summary judgment will result in a recommendation that

Senior Judge Butler enter summary judgment in the favor of the Defendant and enter

final judgment in this case without a trial.

**V.      Conclusion.**

Plaintiff Thomas has failed to show an Eighth Amendment constitutional

---

[10]    An affidavit is a sworn statement in writing made under oath or on affirmation before a
notary public or other authorized officer.  A declaration under penalty of perjury that meets the
requirements of 28 U.S.C. § 1746 is also an acceptable form of evidence.  An affidavit or
declaration filed in support of or in opposition to a motion for summary judgment must be
"made on personal knowledge, set out facts that would be admissible in evidence, and show
that the affiant or declarant is competent to testify to the matters stated" in the affidavit or
declaration.  Fed. R. Civ. P. 56(c)(4).

violation on the part of the Defendants Lieutenant Demings, Detective Golston, Sergeant Hayes, and Officer Clark.  Based on the foregoing, the Court recommends that summary judgment should be **GRANTED** in their favor and that Plaintiff Thomas' action against these Defendants be **DISMISSED** with prejudice.

Furthermore, Plaintiff is hereby placed on **Notice** by the filing of this Report and Recommendation of the **Court's intention to recommend the granting of summary judgment for Defendant Officer Hill**, who has not been served with this complaint to date.  Plaintiff is afforded the opportunity to include within any objections he has to this report and recommendation any reasons that should preclude the entry of summary judgment on behalf of Defendant Hill.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenL.R. 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and

recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 2nd day of May, 2016.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE